Jack Edwin SUPRENANT, Jr.,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A04–0906–CR–319.

Court of Appeals of Indiana.

April 30, 2010.

Transfer Denied July 15, 2010.

Thomas W. Vanes, Office of the Public Defender, Crown Point, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Kathy Bradley, Karl M. Scharnberg, Deputy Attorneys General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Jack Edwin Suprenant, Jr. ("Suprenant") appeals his conviction and sixty-year sentence for Murder, a felony.[1] We affirm.[2]

### Issues

Suprenant presents two issues for review:[3]

---

1. Ind.Code § 35–50–2–3.

2. We held oral argument in this case on April 7, 2010 at Indiana University East in Richmond, Indiana, hosted by Indiana University East, its Criminal Justice Club and the Wayne County Bar Association. We thank our hosts for their gracious hospitality and thank the attorneys for their able advocacy.

3. In his appellate brief, Suprenant articulated a third issue, specifically, whether the trial court abused its discretion by excusing for cause two potential jurors, one of whom had some past social interaction with defense counsel and one of whom knew members of the Suprenant family, including one expected to be a State's witness. At oral argument, Suprenant conceded that, had the potential jurors not been excused for cause, the State had sufficient remaining peremptory challenges to remove them and thus, at most, he merely sustained "theoretical" prejudice. Accordingly, Suprenant no longer claims reversible error in this regard. *See* Ind. Trial Rule 61 (providing in relevant part, "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.")

I. Whether the trial court abused its discretion by refusing to instruct the jury on Voluntary Manslaughter; and

II. Whether his sentence is inappropriate.

## Facts and Procedural History

Suprenant, Kerry Bruckman, and Bruckman's three children (two of which were fathered by Suprenant) lived together in Gary, Indiana. On September 16, 2006, after the couple had argued for several days, in part over Bruckman's involvement with a mutual friend, Bruckman stated her intention to leave Suprenant and began gathering her clothes. Suprenant tried to persuade Bruckman to stay; when his efforts failed, Suprenant stabbed Bruckman repeatedly. Bruckman's screams caused the children to run into their mother's bedroom, where they witnessed some of the attack. Suprenant chased the children back to their bedrooms and continued his attack on Bruckman. Ultimately, Suprenant inflicted sixty-one wounds (including forty-nine stab wounds) upon Bruckman and she died.

Suprenant was tried before a jury on the charge of Murder. He was convicted and sentenced to sixty years imprisonment. He now appeals.

## Discussion

### I. Voluntary Manslaughter Instruction

■ Indiana's Voluntary Manslaughter statute provides:

(a) A person who knowingly or intentionally:

(1) kills another human being; or

(2) kills a fetus that has attained viability (as defined in IC 16–18–2–365);

while acting under sudden heat commits voluntary manslaughter, a Class B felony. However, the offense is a Class A felony if it is committed by means of a deadly weapon.

(b) The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter.

Ind.Code § 35–42–1–3. The statute specifies that sudden heat is a mitigating factor to Murder, as opposed to an element of Voluntary Manslaughter. *Watts v. State,* 885 N.E.2d 1228, 1231 (Ind.2008). Although Voluntary Manslaughter is a lesser-included offense of Murder, it is an atypical example of a lesser-included offense. *Id.* at 1232. In the case of Voluntary Manslaughter, sudden heat is a mitigating factor that the State must prove in addition to the elements of murder. *Id.* Sudden heat must be separately proved and, therefore, if there is no serious evidentiary dispute over sudden heat, it is error for a trial court to instruct a jury on voluntary manslaughter in addition to murder. *Id.*

■ "Sudden heat" is characterized as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection. *Dearman v. State,* 743 N.E.2d 757, 760 (Ind.2001). Anger alone is not sufficient to support an instruction on sudden heat. *Wilson v. State,* 697 N.E.2d 466, 474 (Ind. 1998). Nor will words alone "constitute sufficient provocation to warrant a jury instruction on voluntary manslaughter," and this is "especially true" when the words at issue are not intentionally designed to provoke the defendant, such as fighting words. *Allen v. State,* 716 N.E.2d 449, 452 (Ind.1999).

■ In addition to the requirement of something more than "mere words," the provocation must be "sufficient to obscure

the reason of an ordinary man," an objective as opposed to subjective standard. *See Stevens v. State*, 691 N.E.2d 412, 426 (Ind.1997) (refusing to find that a threat to disclose molestation would "understandably" provoke "an ordinary twenty-year-old man" to rage or terror). Finally, Voluntary Manslaughter involves an "impetus to kill" which arises "suddenly." *Id.* at 427.

■ The trial court refused to instruct the jury on Voluntary Manslaughter, concluding that Bruckman's words to Suprenant were insufficient provocation for sudden heat.[4] Where the trial court rejects a Voluntary Manslaughter instruction based on a lack of evidence of sudden heat, we review the trial court's decision for an abuse of discretion. *Washington v. State*, 808 N.E.2d 617, 626 (Ind.2004).

The parties agree that the record discloses evidence that Suprenant became enraged; they disagree as to the existence of a serious evidentiary dispute such that the jury could conclude that the lesser offense was committed but the greater was not. In arguing that sufficient evidence existed to support the giving of a Voluntary Manslaughter instruction, Suprenant claims that he "lost it" when Bruckman failed to deny that she had been unfaithful to him and was gathering things to move out of the residence with their children. He argues that the act of gathering belongings went beyond mere words. In response, the State points to the legal insufficiency of mere words and also to evidence that shows deliberation and cool reflection inconsistent with sudden heat.

*Perigo v. State*, 541 N.E.2d 936, 938 (Ind.1989) involved the killing of a woman and her fetus after she admitted to the defendant that "their relationship was finished," she had engaged in sexual intercourse with another man, and did not know by whom she was pregnant. The defendant had unsuccessfully argued to the trial court that confessions of illicit sex are sufficient provocation for a Voluntary Manslaughter verdict. *Id.* On appeal, the Court reiterated the principle that "words alone are not sufficient provocation to reduce murder to manslaughter", but nonetheless recognized, "[i]n some circumstances, words may be combined with actions engendering sufficient provocation to reduce an offense from murder to manslaughter." *Id.*

Subsequently, the Court has recognized that discovery of alleged infidelity can "introduce the element of sudden heat." *Evans v. State*, 727 N.E.2d 1072, 1077 (Ind. 2000). In *Evans*, the defendant had witnessed his recent girlfriend having sexual intercourse with another man, placing "sudden heat" in issue; yet the State had negated the presence of sudden heat by showing that the defendant had, after witnessing the tryst, gone downstairs, armed himself with knives, cut the telephone line, gone back upstairs, stood outside the bedroom for over a minute, and then struggled with and killed the man. *Id. See also Ford v. State*, 704 N.E.2d 457, 460 (Ind.1998) (observing that there was substantial evidence that a husband was not acting under sudden heat when, three days after discovering his wife's affair, he took a pistol and shot her twice at close range); *Horan v. State*, 682 N.E.2d 502, 507 (Ind.

---

4. Although a defendant will typically draft and tender an instruction on a lesser-included offense, here the trial court's practice in Murder cases was to utilize a court-generated "combined" jury instruction addressing both the elements of Murder and Voluntary Man-

slaughter. At the conclusion of argument over the propriety of the Voluntary Manslaughter language, at which Suprenant argued for its inclusion, that portion of the "combined" instruction was stricken.

1997) (there was no serious evidentiary dispute as to whether husband was acting in sudden heat when he beat his wife's lover to death after an earlier confrontation and beating).

■ Here, the alleged provocation was comprised of words ending a relationship accompanied by preparations to leave. Although there was some non-verbal action by the victim, we do not find that the lawful conduct of gathering ones belongings goes so far beyond "mere words" as to constitute "sudden heat" justifying a Voluntary Manslaughter instruction. Furthermore, the record is replete with evidence that the impetus to kill did not "suddenly" arise in response to a contemporaneous event. The couple had been arguing at length. Earlier on the day of Bruckman's death, Suprenant had told his mother that Bruckman planned to leave and take the children. During that conversation, he was alternately calm and angry. He had also told his father of Bruckman's alleged infidelity.

Most compelling, Suprenant stopped his attack on Bruckman when confronted by the children, forced each of them into their rooms, and returned to resume stabbing his victim. This is akin to the circumstances in *Stevens*, where the defendant strangled his victim, who then resumed breathing, giving the defendant "ample time ... to collect his wits and realize the heinousness and depravity of his actions." 691 N.E.2d at 427. Instead, the defendant deliberated and chose to carry out the murder by another means; he could not later prevail upon his claim that a sudden heat instruction was warranted. *Id.* Likewise, when Suprenant's screaming children confronted him, he had ample time to reflect upon the heinousness of his actions and seek help for the children's mother. He chose not to do so. We find no abuse of discretion in the trial court's rejection of a Voluntary Manslaughter instruction.

## II. Sentence

■ Suprenant contends that his sentence is inappropriate pursuant to Indiana Appellate Rule 7(B). In *Reid v. State*, the Indiana Supreme Court reiterated the standard by which our state appellate courts independently review criminal sentences:

> Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence through Indiana Appellate Rule 7(B), which provides that a court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The burden is on the defendant to persuade us that his sentence is inappropriate.

876 N.E.2d 1114, 1116 (Ind.2007) (internal quotation and citations omitted).

■■ More recently, the Court reiterated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind.2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. *See id.* at 1224. One purpose of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224.

A person who commits murder has a sentencing range of between forty-five years and sixty-five years, with the advisory sentence being fifty-five years. Ind. Code § 35–50–2–3. As such, Suprenant received a sentence that is five years in excess of the advisory sentence. He asks that we reduce his sentence to the advisory, citing his lack of criminal history, his need for special education classes, and his acceptance of responsibility for the crime.

The nature of Suprenant's offense was particularly brutal. He inflicted sixty-one wounds on his victim, with forty-nine of these described as stab wounds. Three children were present in the trailer home during the killing; they observed a portion of the attack.

As to the character of the offender, Suprenant has no criminal history apart from an offense of operating a vehicle without a license. And, as he points out, Suprenant "admitted to guilt at the scene." Appellant's Brief at 12. Nonetheless, this admission was essentially pragmatic in that Suprenant was the only adult present and there were three small eyewitnesses to his crime.

In sum, we do not find that the nature of the offense or the character of the offender renders a sentence of five years more than the advisory sentence inappropriate.

Affirmed.

MAY, J., and ROBB, J., concur.