Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 19 2013, 8:57 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH SCHAEFER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1206-CR-468 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol Orbison, Judge
Cause No. 49G22-1105-MR-30677

**April 19, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Kenneth Schaefer ("Schaefer") was convicted of murder and Class C felony battery. He was sentenced to an aggregate of sixty years executed with the last five years to be served through Community Corrections. Schaefer raises the following issues on appeal:

I. whether the trial court abused its discretion in refusing to give his tendered jury instructions on sudden heat and voluntary manslaughter and

II. whether his sentence was inappropriate in light of the nature of the offense and his character.

We affirm.

## Facts and Procedural History

In spring 2011, Schaefer and Bobbie Schaefer ("Bobbie") had been married twenty-three years, and they had three children together—a nineteen-year-old son in the Marines, a sixteen-year-old[1] daughter ("A.S."), and an eleven-year-old daughter ("R.S"). In March 2011, Schaefer suspected Bobbie was having an affair. In the middle of April 2011, Schaefer and Bobbie talked about separating or getting a divorce. On Friday, April 29, 2011, Bobbie told A.S. that she was going to file for divorce on May 2, 2011, and later that evening, Schaefer and Bobbie told A.S. and R.S. that they would be moving with Bobbie to Alabama, where Bobbie's niece lived.

On Saturday, April 30, 2011, A.S. and R.S. stayed the night at a friend's house because of their parents arguing. And that evening Schaefer and Bobbie discussed the

---

[1] There is a disparity in the parties' briefs regarding A.S.'s age at the time of the incident. Appellant's Brief indicates that A.S. was 17 years old; whereas, Appellee's brief indicates that A.S. was 14 years old. In the State's opening statement, the State identified A.S. as being 16 years old at the time of the incident, and Officer John Wallace testified that she was approximately 16 years old at the time. A.S. did not testify regarding her age.

finances of their separation. Schaefer believed that, while they were working on their finances, Bobbie was texting Alvin Plank ("Plank"), the man with whom Schaefer suspected Bobbie was having an affair.[2] Tr. pp. 379-80. However, Schaefer and Bobbie slept that night in the same bedroom. Tr. p. 363.

On Sunday, May 1, 2011, Schaefer and Bobbie attended church as did A.S. and R.S. During a sermon on responsibility, Schaefer became "infuriated" when Bobbie remarked about his belongings in the bedroom. Tr. pp. 364-65. He left the church and went to cool down. He then returned to the church to drive another church member home. He testified that his memory was spotty during this time. A.S. and R.S. arrived home first from church. Bobbie arrived shortly thereafter, and she went into her bedroom to take a nap. When Schaefer arrived home, he told his daughters to watch their movie on the computer in A.S.'s room to save electricity, and then he left to get a newspaper.

Schaefer returned about ten minutes later. He then took two knives from the kitchen and went into the room where Bobbie was sleeping. He stabbed Bobbie repeatedly. A.S. and R.S. heard their mother scream, and they ran towards their parent's bedroom where their mother was screaming. The bedroom was dark but the door to the room was open, and they could see their father straddling their mother on the bed. They saw his arm moving, and their mother trying to fight him off. A.S. went into the room and tried to push her father off her mother. She testified that her father did not seem aware that she was even there. A.S. eventually managed to get her father off the side of

---

[2] Schaefer testified that Bobbie was having an affair, but he had no physical proof of the affair. Tr. pp 349, 373. The children testified that Plank was their mother's "friend[.]" Tr. pp. 119, 168, 202.

3

the bed. However, he then got back onto the bed, and while he was getting back up onto the bed, he stabbed A.S. in the left arm with the knife.

A.S. and R.S. fled back to A.S.'s bedroom and called 911. Schaefer then walked past A.S.'s bedroom door, dropped his phone, and told her to call the police. A.S. went to find a clean cloth to put on her arm, and she observed her dad standing in the bathroom. While he was in the bathroom, Schaefer tried to cut his own throat. Officer John Wallace ("Officer Wallace") arrived on the scene, and A.S. let him into the home. Officer Wallace observed Schaefer in the bathroom and ordered him to drop the knife. Medics came in to treat Bobbie; however, she died at the scene. An autopsy of Bobbie revealed that there were 51 wounds on her body, and the cause of death was "[m]ultiple stab wounds to the chest, neck and abdomen." Tr. pp. 302, 315.

Schaefer was tried by a jury on April 30 and May 1, 2012. At trial, Schaefer tendered instructions for voluntary manslaughter and sudden heat, but the trial court refused to deliver the instructions to the jury after finding "nothing in the evidence that falls within the definition of sudden heat." Tr. p. 391. The jury found Schaefer guilty of murder and Class C felony battery. Schaefer was sentenced on May 18, 2012 to concurrent sentences of sixty years for murder and eight years for Class C felony battery with the last five years to be served in Community Corrections.

Schaefer now appeals. Additional facts will be provided as necessary.

## I. Jury Instructions

Schaefer argues that the trial court abused its discretion by failing to instruct the jury on voluntary manslaughter and on sudden heat, which "is a mitigating factor that

4

reduces the crime of murder to voluntary manslaughter." Conner v. State, 829 N.E.2d 21, 24 (Ind. 2005) (citing I.C. § 35-42-1-1 and I.C. § 35-42-1-3; see also Massey v. State, 955 N.E.2d 247, 253 (Ind. Ct. App. 2011) ("The only difference between murder and voluntary manslaughter is the existence of sudden heat . . . ."). Indiana's Voluntary Manslaughter statute provides:

(a) A person who knowingly or intentionally:

    (1)   kills another human being; or

    (2)   kills a fetus that has attained viability (as defined in IC 16-18-2-365);

        while acting under sudden heat commits voluntary manslaughter, a Class B felony. However, the offense is a Class A felony if it is committed by means of a deadly weapon.

(b)    The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter.

Ind. Code § 35-42-1-3.

"Voluntary Manslaughter is a lesser-included offense of Murder," but it is an "atypical example of a lesser-included offense" since sudden heat is a mitigating factor that must be proven in addition to the elements of murder. Suprenant v. State, 925 N.E.2d 1280, 1282 (Ind. Ct. App. 2010). The trial court should instruct the jury on voluntary manslaughter "if the evidence demonstrates a serious evidentiary dispute regarding the mitigating factor of sudden heat; that is, there must be evidence showing sufficient provocation to induce passion that renders a reasonable person incapable of cool reflection." Massey v. State, 955 N.E.2d 247, 256 (Ind. Ct. App. 2011).

"'Sudden heat' is characterized as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection." Suprenant, 925 N.E.2d at 1282 (quoting Dearman v. State, 743 N.E.2d 757, 760 (Ind. 2001)). "[T]he provocation must be 'sufficient to obscure the reason of an ordinary man[.]'" Id. at 1282-83 (quoting Stevens v. State, 691 N.E.2d 412, 426 (Ind. 1997)).

Here, the trial court instructed the jury on murder but refused to instruct the jury on voluntary manslaughter after finding "nothing in the evidence that falls within the definition of sudden heat." Tr. p. 391. "Where the trial court rejects a Voluntary Manslaughter instruction based on a lack of evidence of sudden heat, we review the trial court's decision for an abuse of discretion." Suprenant, 925 N.E.2d at 1283.

Schaefer argues that there was a serious evidentiary dispute whether there was sudden heat. Schaefer argues that there was evidence of sudden heat because Bobbie informed him that she (1) wanted a divorce, (2) was moving with A.S. and R.S. to Alabama, and (3) was having an affair. Appellant's Br. at 14. Schaefer also contends that there was evidence of sudden heat, because a passerby heard them arguing on the day of the incident,[3] and Bobbie made comments to him during the church service regarding

---

[3] Schaefer argues that the trial court erred by failing to consider Detective John Correll's ("Detective Correll") testimony that a person passing by the Schaefer's house on the day of the incident had heard an argument. Tr. pp. 250-51. However, other evidence supports that Bobbie and Schaefer were not arguing prior to Schaefer stabbing Bobbie but rather that Bobbie was sleeping. Schaefer testified that he has gaps in his memory, but he does not remember anything between grabbing the knives and his stabbing her. Tr. p. 368. A.S., who was home before and during the incident, also testified she did not hear her parents arguing, but she was able to hear her mother's screams when Schaefer stabbed her. Therefore, the trial court did not err by failing to consider Detective Correll's testimony. Moreover, even if the trial court had considered the testimony, mere words, without more, are not provocation sufficient to cause sudden heat. And, there was no evidence in the record that the argument involved anything more than words.

6

picking up clothing on his side of the room. Though these events may have made Schaefer angry, mere words or anger, without more, is not provocation sufficient to cause sudden heat. Suprenant, 925 N.E.2d at 1282. Moreover, an expression of desire to end a relationship is not sufficient provocation by itself to warrant a voluntary manslaughter instruction. Massey v. State, 955 N.E.2d 247, 257 (Ind. Ct. App. 2011).

Schaefer further argues that it was not mere words, because he suspected that Bobbie was texting Plank while working with him on their finances the day before he killed her. However, even if Bobbie was texting Plank, this was not an action that would be sufficient to obscure the reason of an ordinary person. Rather, we find this situation similar to the situation in Suprenant, where the victim ended the relationship with the defendant and proceeded to pack up her belongings. 925 N.E.2d at 1284. Our court held that "[a]lthough there was some non-verbal action by the victim, we do not find that the lawful conduct of gathering ones belongings goes so far beyond 'mere words' as to constitute 'sudden heat' justifying a Voluntary Manslaughter instruction." Id. Similarly, here, Bobbie's action of texting does not goes so far beyond mere words as to constitute sudden heat, because an ordinary person would not be so enraged by this texting that a day later his reasoning would be obscured.

Even if the events were provoking, we also look at whether there was a sufficient period after the allegedly provoking events to de-escalate tensions. See Aguilar v. State, 811 N.E.2d 476, 479 (Ind. Ct. App. 2004), on reh'g, 820 N.E.2d 762 (Ind. Ct. App. 2005) and trans. granted, opinion vacated on other grounds, 831 N.E.2d 741 (Ind. 2005) and aff'd, 827 N.E.2d 31 (Ind. 2005) (holding that the defendant had time to cool off from an

7

altercation when the defendant killed the victim several hours waited several hours after the altercation); see also Horan v. State, 682 N.E.2d 502, 507 (Ind. 1997) (holding that there was insufficient that defendant acted in sudden heat where sufficient time elapsed affording defendant time for cool reflection). If "the impetus to kill did not 'suddenly' arise in response to a contemporaneous event," this supports that the defendant had time to reflect. See Suprenant, 925 N.E.2d at 1284.

In this case, the events were not contemporaneous with Schaefer's murder of Bobbie. Schaefer had known for several weeks that Bobbie wanted a divorce and had known for a couple of days that she intended to move out of state and take the children with her. The allegedly provoking event occurred on the morning Bobbie was murdered, when she made a comment to Schaefer while at church about picking up his clothing and other effects in their bedroom. This comment upset Schaefer, and he left church and went to McDonald's for a soft drink. Schaefer "cooled down" before going back to church to drive a person home, and the record supports that after he "cooled down" he had no further interaction with Bobbie that day prior to stabbing her. Tr. pp. 365-66; see supra at fn. 3.

Following church, Bobbie returned home prior to Schaefer and laid down to take a nap, as she customarily did on Sunday. Schaefer meanwhile drove the church member home, returned to his home, left to get a newspaper, and then returned to his home again. Only after this significant passage of time did Schaefer go into the kitchen, pick up two steak knives, and then enter their bedroom where Bobbie was taking a nap. A.S. and R.S testified that they did not hear their parents fight that day, but they heard their mother

8

scream when their father stabbed her. When they approached their parents' bedroom, the lights were still off in the room, which further supports the conclusion that Schaefer was not provoked just prior to the murder, because Bobbie was, in fact, taking a nap at the time. The passage of time between these allegedly "provoking" events and Schaefer's murder of Bobbie was significant. Thus, the evidence supports the trial court's decision there was not "sufficient provocation to induce passion that renders a reasonable person incapable of cool reflection" and the impetus to kill did not suddenly arise. Massey v. State, 955 N.E.2d 247, 256 (Ind. Ct. App. 2011). For all these reasons, the trial court did not abuse its discretion by refusing to instruct the jury on voluntary manslaughter, because the evidence was not sufficient to raise a serious evidentiary issue of sudden heat.[4]

## II. Inappropriate Sentence

Schaefer also contends that the aggregate sentence of sixty years executed with the last 5 years to be served in Community Corrections is inappropriate in light of the nature of the offenses and of his character. Under Indiana Appellate Rule 7(B), we may "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although we may review and revise a sentence, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the

---

[4] Schaefer also argues that he was deprived of due process because where there is "some evidence of 'sudden heat,'" the trial court should instruct the jury that the absence of special heat is an element of murder. Appellant's Br. at 23. We need not address this issue since we conclude there was not sufficient evidence to raise a serious evidentiary issue of sudden heat.

sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We must give "deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." Trainor v. State, 950 N.E.2d 352, 355-56 (Ind. Ct. App. 2011), trans. denied (quoting Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007)) (internal quotation marks omitted).

When we review the appropriateness of a sentence, we consider "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Cardwell, 895 N.E.2d at 1224. The defendant has the "burden to persuade us that the sentence imposed by the trial court is inappropriate." Shell v. State, 927 N.E.2d 413, 422 (Ind. Ct. App. 2010). Before we may revise a sentence, the defendant must "demonstrate that his sentence is inappropriate in light of *both* the nature of his offenses and his character." Williams v. State, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (emphasis in original).

As to the nature of the offense, we note that the nature of this offense was particularly heinous. Schaefer took two knives from the kitchen, walked into the room where his wife was sleeping, and proceeded to stab her fifty-one times. A.S. and R.S. heard their mother scream and observed their dad straddling their mother on the bed while his arm moved. A.S. attempted to get her dad off of Bobbie, and she was able to get him off the side of the bed, but then Schaefer stabbed A.S. The children watched

10

their father kill their mother, and one daughter was stabbed in the process of trying to help her mother.

As to Schaefer's character, we note that Schaefer's criminal history is limited and that he did express some remorse, but he also appeared to blame the victim for her "deception." Tr. p. 444. We note that the trial court found that there was a "degree of remorse on the part of Mr. Schaefer" and that there was "no real criminal history[.]" Tr. p. 460. Schaefer argues that in light of these mitigating factors he should not have been given an enhanced sentence; however, we defer to the trial court's decision that even in light of these factors, an enhanced sentence was still appropriate due to the "horrendous" circumstance of the offenses. Tr. p. 461. Moreover, we note that the trial court did not give Schaefer the maximum sentence possible for murder of sixty-five years and ordered the sentences to be served concurrently.

Schaefer has failed to prove that his sentence "is inappropriate in light of *both* the nature of his offenses and his character." Williams, 891 N.E.2d at 633 (emphasis in original). While Schaefer's character alone may not have supported an enhanced sentence, the sentence was not inappropriate in light of horrific nature of the offenses in this case.

### Conclusion

The trial court did not abuse its discretion by refusing to give Schaefer's tendered instruction to the jury regarding voluntary manslaughter and sudden heat, and Schaefer's sentence is not inappropriate in light of the nature of the offenses and his character.

11

Affirmed.

BAKER, J., and MAY, J., concur.