## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**ATTORNEY FOR APPELLANT**

Jeremy K. Nix
Matheny Hahn Denman & Nix, LLP
Huntington, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indina

Graham T. Youngs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William Eugene Dager,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 27, 2015

Court of Appeals Cause No. 90A05-1410-CR-464

Appeal from the Wells Circuit Court.

The Honorable Kenton W. Kiracofe, Judge.

Cause No. 90C01-1304-FA-3

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, William Eugene Dager (Dager), appeals his sentence following his conviction for child molesting, a Class C felony, Ind. Code § 35-42-4-3(b) (2013).

We affirm.

## ISSUE

Dager raises one issue on appeal, which we restate as follows: Whether his maximum sentence of eight years was appropriate in light of the nature of the offense and his character.

## FACTS AND PROCEDURAL HISTORY

In February of 2013, Dager was on probation following a conviction for Class B felony child molesting and was required, by the terms of his probation, to attend counseling sessions and submit to polygraph testing. On February 24, 2013, Dager took a polygraph test and admitted that, one morning during the previous week, his six-year-old daughter, A.D., had come into his bedroom, jumped onto his bed, and landed on his erection. Because she almost began crying of pain, Dager calmed her by explaining that she had landed on his hand. Following the session, the counsellor reported Dager's statements to the Wells County Department of Child Services.

[5] The next day, A.D. was interviewed by detectives with the Wells County police department. During the interview, A.D. told the detectives that she and Dager would often play a game of tag in the laundry room or his bedroom. During the game, A.D. would say "fuck me harder, dad" or "fuck me pussy" because "he really likes it." (Transcript pp. 38, 48). Dager would reply, "fuck me harder, A.D." and "fuck me pussy, A.D." (Tr. p. 48). Dager told A.D. to keep those words a secret. During the game, Dager would touch A.D.'s vagina, which she referred to as her "no-no spot." (Tr. 45). "He would rub his hand all around" on her vagina both underneath and above her clothing, for a "medium time." (Tr. p. 49). A.D. "can't stand it." (Tr. p. 52). When A.D. and Dager played tag in the bedroom, Dager asked A.D. to lay on top of him and would "rub" his penis on her vagina with his clothes on. (Tr. p. 50). When detectives asked A.D. how many times Dager had done this, A.D. held up ten fingers.

[6] On February 24, 2013, the morning of the polygraph statement, A.D.'s mother (Mother) had walked into the bedroom and observed Dager on top of A.D., rubbing his penis on her vagina, and heard A.D. tell Dager "fuck me harder." (Tr. p. 53). Mother was angry and told A.D. that she and Dager were "in so big trouble." (Tr. p. 56). However, before A.D.'s interview with the detectives, Mother told A.D. to keep the incident a secret. It made A.D. feel "[r]eally, really, really sad." (Tr. p. 55).

[7] On April 18, 2013, A.D. met with Joyce Moss (Nurse Moss), a forensic nurse examiner. A.D. told Nurse Moss that Dager touched her "on [her] skin" and "on the inside" of her "no-no spot." (Tr. p. 68). In her report, Nurse Dager

"noted that the child clearly disclosed multiple events of digital female sex organ penetration by bio-dad." (Tr. p. 70).

[8] On April 29, 2013, the State filed an Information, charging Dager with child molesting, a Class A felony, and child molesting, a Class C felony. A jury trial was conducted on September 10 and 11, 2013, at the close of which the jury was deadlocked and the trial court declared a mistrial. On July 9, 2014, the State and Dager entered into an agreement whereby Dager waived his right to a jury trial in exchange for the State dismissing the Class A felony child molesting charge.

[9] On August 11, 2014, a bench trial ensued on the remaining Class C felony child molesting. During the bench trial, Mother testified that she and Dager had engaged in sexual intercourse, near A.D.'s bedroom, and that she had uttered "fuck me harder daddy." (Tr. p. 78). Mother affirmed A.D.'s statement that Mother had walked into the room when Dager was on top of A.D., but could not recall whether Dager "had an erection." (Tr. p. 78). Dager also testified that "one morning around mid-February," A.D. entered his bedroom and "jumped" on him to wake him up. (Tr. p. 80). "[S]he landed on [his] groin area, where [he] had a morning erection." (Tr. p. 80). Because she "had a bewildered look on her face" and he did not want to "alarm her," he explained to her that she had landed on his hand. (Tr. p. 80). Because A.D. had previously been a victim of sexual molestation by a neighbor, Dager wanted the "information [to] be known as soon as [he] figured it was relevant" and he sought "an educated opinion on how to handle it." (Tr. p. 81). At the close of

the bench trial, the trial court found Dager guilty of child molesting, as a Class C felony. On September 3, 2014, during sentencing hearing, the trial court sentenced Dager to an executed sentence of eight years.

[10] Dager now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[11] Dager contends that his sentence is inappropriate in light of the nature of the offense and his character. Although a trial court may have acted within its lawful discretion in imposing a sentence, Indiana Appellate Rule 7(B) provides that an appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether this court regards a sentence as appropriate at the end of the day turns on its sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case. *Suprenant v. State*, 925 N.E.2d 1280, 1284 (Ind. Ct. App. 2010), *trans. denied*.

[12] Dager was found guilty of child molesting as a Class C felony. The advisory term for a Class C felony is four years with the minimum and maximum terms being two and eight years, respectively. I.C. § 35-50-5-6 (2013). Here, the trial court imposed the maximum sentence.

[13] With respect to the nature of Dager's offenses, we note at the outset that "[c]rimes against children are particularly contemptible." *Walker v. State*, 747 N.E.2d 536, 538 (Ind. 2001). Dager's crime is even more despicable in light of his knowledge that A.D., even though only six years old, had already been a victim of molestation and his own statement during the sentencing hearing that "[t]he fact that my daughter was molested by someone else, who is charged and incarcerated, . . . destroys me because I failed to protect" her. (Tr. p. 100). Despite this acknowledgment, Dager molested A.D. numerous times in the safety of her own home and under the guise of playing an innocent child's game of tag. Dager groomed her to say things he "really like[d]" and told her to keep those a secret. (Tr. pp. 38, 48).

[14] Turning to his character, we note that Dager was on probation for a 2007 Class B felony child molesting when he asked for "an educated opinion" on the instant crime. (Tr. p. 81). In 2001, he was convicted of theft and placed on probation, which he also subsequently violated. While we agree with Dager that there is an absence of physical injuries and threat of force, we cannot ignore the pattern of grooming a young child to submit to unwanted touches to satisfy the perpetrator's own sexual pleasures. He violated the love and trust a daughter bestows on her father to more easily commit these crimes. We strongly disagree with Dager's suggestion to equate his agreement to a bench trial with a plea agreement because it let the victim and her family avoid a second jury trial. In fact, not only was the family obligated to live through a jury trial, the family also had to live through the ordeal and stress of a second

trial. The mere distinction that the second proceeding was a bench trial does not soften its impact and make it less arduous. Throughout these proceedings, Dager did not reflect remorse and acceptance of responsibility, but rather attempted to place the blame on A.D., claiming that she still needed help to overcome her first molestation, all the while professing his own innocence. Not only did Dager destroy the childhood of his daughter but he also damaged—maybe irreparably—her relationship with her Mother, who refused to believe her own child. In light of the evidence before us, we conclude that Dager's eight-year sentence is appropriate in light of the nature of the offense and his character.

## CONCLUSION

Based on the foregoing, we conclude that Dager's sentence was appropriate pursuant to Appellate Rule 7(B).

Affirmed.

Vaidik, C. J. and Baker, J. concur