## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 11 2015, 8:36 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Keith Brown,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 11, 2015

Court of Appeals Case No.
49A02-1411-CR-774

Appeal from the Marion Superior Court;
The Honorable Sheila Carlisle, Judge;
49G03-1307-MR-43238

**May, Judge.**

[1] Keith Brown appeals his conviction of and sentence for murder, a felony.[1]  We affirm.

## Facts and Procedural History

[2] On the evening of June 27, 2013, Maria Rodriguez saw Brown carrying a gun. When asked why he had a gun, Brown replied he was "tired of these people talking shit" about him.  (Tr. at 277.)  Later that evening, Brown arrived at the apartment of Maria's next door neighbor, Angela Meadors, asking if Angela had heard a rumor about Brown.  Angela told Brown he needed to talk to Maria.  Brown went next door and brought Maria to Angela's apartment.

[3] At the time, Angela was hosting a birthday party for her fiancé, Jimmy Fesler. There were multiple people present, including children.  Brown entered the kitchen to confront Angela about the rumor.  He told Angela to "keep . . . his fucking name out of her mouth." (*Id*. at 286.)  Fesler then stood up and told Brown to "quit . . . disrespecting [his] old lady." (*Id*. at 65.)  Brown took the gun from his pocket, cocked it, and shot Fesler twice, once in the face and once in the neck.  Fesler died from his injuries.

[4] Brown fled, and police arrested him in Detroit, Michigan on August 4, 2013. The State charged Brown with murder and the State requested a sentencing enhancement because Brown used a handgun in the commission of the crime.[2]

---

[1] Ind. Code § 35-42-1-1 (2007).

[2] Ind. Code § 35-50-2-11(c) (2005).

On September 30, 2014, a jury found Brown guilty of murder and the State declined to proceed with the sentencing enhancement. On October 8, the trial court sentenced Brown to sixty years.

## Discussion and Decision

### 1. *Sufficiency of the Evidence*

When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the fact-finder's decision. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the ruling. *Id.* We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the decision. *Id.* at 147.

#### A. Voluntary Manslaughter

To prove Brown committed murder, the State had to present evidence he knowingly or intentionally killed Fesler. *See* Ind. Code § 35-42-1-1(1). Brown admits he killed Fesler. He argues, however, he did not do so knowingly or intentionally, but instead acted in sudden heat, which would require that he be convicted of Class A felony voluntary manslaughter. *See* Ind. Code § 35-42-1-3

(1997) ("existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter.").

[7] Words alone are not sufficient provocation for voluntary manslaughter especially when they are not intentionally designed to provoke. *Suprenant v. State*, 925 N.E.2d 1280, 1282 (Ind. Ct. App. 2010), *trans. denied*. "Sudden heat" requires

> [s]ufficient provocation to engender passion which is demonstrated by anger, rage, sudden resentment, or terror that is sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection.

*Jackson v. State*, 709 N.E.2d 326, 328 (Ind. 1999).

[8] Brown argues his anger was originally directed at Angela and Maria, whom he accused of gossiping about him, and he did not focus on Fesler until Fesler told Brown to stop "disrespecting [Fesler's] old lady." (Tr. at 65.) He claims "[i]n that split second, the anger, rage and resentment engendered by [Fesler's] comment obscured [Brown's] reason and prevented any deliberation, premeditation, or cool reflection . . . . Nothing else explains this irrational, impulsive act." (Br. of Appellant at 13.).

[9] The State presented evidence Brown did not act in sudden heat. Brown carried a gun the night of the murder because he was "tired of these people talking shit" about him. (Tr. at 277.) Brown went to multiple apartments in search of the people he thought were gossiping about him. Finally, the only possible act of

provocation from Fesler would be his statement asking Brown to stop disrespecting Angela, which we have held is not sufficient provocation for sudden heat. *See Suprenant*, 925 N.E.2d at 1282. Brown's arguments are invitations for us to reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146 (appellate court cannot reweigh evidence or judge the credibility of witnesses).[3]

## B.    Self-Defense

[10]    Our standard of review regarding a claim of self-defense is well-settled:

> "Self-defense is recognized as a valid justification for an otherwise criminal act." "A person is justified in using reasonable force against another person to protect himself . . . from what he reasonably believes to be the imminent use of unlawful force." Self[-]defense is established if a defendant (1) was in a place where the defendant had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. . . . [O]nce a defendant claims self-defense, the State bears the burden of disproving at least one of the elements beyond a reasonable doubt. The State may meet its burden of proof by "rebutting the defense directly, by affirmatively showing that the defendant did not act in self[-]defense, or by simply relying upon the sufficiency of its evidence in chief."

*Brown v. State*, 738 N.E.2d 271, 273 (Ind. 2000) (citations omitted).

---

[3] Brown also argues he should be convicted only of Class C felony reckless homicide because he did not knowingly shoot Fesler. However, as we hold the State presented sufficient evidence Brown knowingly and intentionally shot Fesler and did not do so in sudden heat, we have already decided Brown committed the act knowingly, and thus Brown's argument fails.

Brown argues he acted in self-defense when shooting Fesler because Fesler spoke to him in a threatening manner, Fesler was much larger than Brown, and Fesler grabbed Brown's wrist after Brown drew his gun. However, the State presented evidence Brown was the initial aggressor when he pulled a gun from his pocket after Fesler asked Brown to stop disrespecting Angela, and thus the State properly rebutted Brown's claim of self-defense. *See id*. (State rebuts defendant's claim of self-defense upon proving defendant was initial aggressor in confrontation). Brown's arguments to the contrary are invitations for us to reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

## 2. *Inappropriate Sentence*

We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (citing Ind. Appellate Rule 7(B)). We consider not only the aggravators and mitigators found by the trial court, but also any other factors appearing in the record. *Roney v. State*, 872 N.E.2d 192, 206 (Ind. Ct. App. 2007), *trans. denied.* The appellant bears the burden of demonstrating his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 878 N.E.2d 218 (Ind. 2007). The advisory sentence for murder is fifty-five years, with a range of forty-five to

sixty-five years. Ind. Code § 35-50-2-3. The trial court sentenced Brown to sixty years.

[14] One factor we consider when determining the appropriateness of a deviation from the advisory sentence is whether there is anything more or less egregious about the offense committed by the defendant that makes it different from the "typical" offense accounted for by the legislature when it set the advisory sentence. *Rich v. State*, 890 N.E.2d 44, 54 (Ind. Ct. App. 2008), *trans. denied*. Brown argues his sentence is inappropriate based on the nature of the offense because the "shooting here was not motivated by greed or self-interest, but rather arose out of Mr. Brown's distress that people might be talking about him." (Br. of Appellant at 15.) However, the fact he shot a man who asked him to stop disrespecting that man's fiancé without additional provocation from the victim and in the presence of children is noteworthy when considering the nature of the offense.

[15] When considering the character of the offender, one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of a criminal history in assessing a defendant's character varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id*. Brown was twenty-two years at the time he committed murder. As a juvenile, he had been adjudicated a delinquent for committing acts that would be Class D felony theft, Class A misdemeanor criminal mischief, and Class A misdemeanor criminal conversion if committed by an adult. As an adult, Brown had been convicted of Class C felony battery

for battering a pregnant woman and had twice violated his probation for that offense. His criminal history shows an escalation in the seriousness of his crimes. *See Mills v. State*, 536 N.E.2d 290, 291 (Ind. 1989) (a "pattern of steadily escalating offenses" justified sentence beyond advisory sentence).

[16] Brown argues his mental health problems and his difficult childhood make his sentence inappropriate. Brown alleges he suffers from bipolar disorder and ADHD. However, the record does not reflect he has been diagnosed with a mental disorder, only that he self-reported the afflictions and other symptoms of paranoia.[4] Regarding his difficult childhood, Brown testified he was left in the care of his grandmother after his mother was incarcerated and he had to protect himself and his sister from abuse. However, we are not convinced Brown's undiagnosed mental illness or his difficult childhood should have warranted a reduction in sentence. *See Bethea v. State*, 983 N.E.2d 1134, 1141 (Ind. 2013) (holding sentence appropriate despite undiagnosed mental disorders and difficult childhood). Brown shot a man at close range twice, in the presence of others, including children, and then walked calmly from the scene. He evaded capture for approximately one month. Neither Brown's character nor his offense lead us to believe his sentence is inappropriate.

---

[4] The pre-sentence report also indicates Brown receives disability payments for ADHD and asthma. However, this information is also self-reported and was not verified.

# Conclusion

[17] The State presented sufficient evidence Brown committed murder, and it rebutted his claim of self-defense. His sentence was not inappropriate based on his character and the nature of the offense. Accordingly, we affirm.

[18] Affirmed.

Robb, J., and Mathias, J., concur.