

IN THE

# Court of Appeals of Indiana

Corby J. Lee,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Nov 21 2024, 9:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

November 21, 2024

Court of Appeals Case No.
24A-CR-1119

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause No.
02D05-2309-MR-21

**Opinion by Judge Brown**
Judges Mathias and Kenworthy concur.

**Brown, Judge.**

[1] Corby Lee appeals his conviction and sentence for murder. Lee argues the trial court abused its discretion in not instructing the jury as to the offense of voluntary manslaughter and challenges his sentence. We affirm.

**Facts and Procedural History**

[2] Lee lived with Alisa True and their three-year-old child, I.L., in Fort Wayne. In the early morning of September 19, 2023, Lee was awake after using drugs, including methamphetamine. At around 4:00 a.m., Lee retrieved a nine-millimeter gun from a gun safe. The gun was fully loaded, the magazine held seventeen bullets, and there was a bullet in the chamber. Lee knew that the gun was loaded with hollow-point bullets and that hollow-point bullets cause more damage than regular bullets. True woke up around 6:30 a.m. to 7:00 a.m., and the couple began arguing. True was upset because Lee "was up all night on drugs and . . . had guns out." Transcript Volume III at 33. They argued for "probably over an hour." *Id*. at 34. At some point, True walked away from Lee, and Lee waited for her to walk past the bed and then fired one shot at her. The bullet struck True on the upper right shoulder of her back, traveled through her upper chest, and lodged in her chest wall, resulting in her death. The gunshot woke three-year-old I.L. Lee called 911 at 8:51 a.m. I.L. told a responding police officer "something was wrong with Mommy." Transcript Volume II at 179. A responding paramedic observed that True's arms and hands were cool to the touch and observed "lividity that . . . typically takes between 30 minutes to four hours to set in." *Id*. at 201. Lee gave a statement to

Fort Wayne Police Detective Nicholas Lichtsinn and did not show signs of intoxication.

[3] The State charged Lee with murder and alleged that he used a firearm in committing the offense. The court held a jury trial. Lee testified that he and True argued for "probably over an hour." Transcript Volume III at 34. He testified:

> She kept leaving and coming back and screaming at me, and I was already out of my mind at that point. And she walked away at one time and I shot in her direction, which I was waiting for her to walk by to get to the nightstand. I was gonna shoot the TV, which is the – which is, obviously, not a good idea, but – and you know the rest.

*Id*. He indicated that he did not take time to aim at True and did not intend to kill her when he shot his gun. When asked "[w]hy did you fire a gun in her direction," he testified: "I wasn't in my right mind and, at the time, I thought it would stop her from yelling at me and leave me alone and I thought it would – yeah, I don't know what I thought it would do, but I thought it would stop whatever was going on." *Id*. at 35. He stated "I was waiting for her to get past the bed so I didn't hit her." *Id*. at 36. He indicated that he called 911 about seven to ten minutes after firing the gun.

[4] On cross-examination, Lee indicated that he was angry, True was yelling at him, and he had the gun in his hand during the entire argument. When asked "she walked away from you; right," he answered, "[m]ore than once, yes," and when asked "right before you shot her, she had walked away from you," he

replied "Yes." *Id*. at 38. When asked "you knew you were gonna shoot, and you made the conscious decision to wait," he stated "I waited for her to walk past the bed, yes." *Id*. at 39.

[5] Lee requested that the jury be instructed on voluntary manslaughter and reckless homicide, and the State objected. The court stated:

> I understand the State's argument, but there is a serious evidentiary dispute. Whether the jury's gonna believe [Lee] or not, that's the jury's province, not for the Court to make that determination, because he testified, "It was not my intention to shoot her. I fired a gun in her direction, that is the definition of reckless." I agree with the State though on the voluntary manslaughter, words aren't enough to reduce it to a voluntary manslaughter, but I will give the reckless homicide instruction as a lesser-included of murder, because I don't think there's a serious evidentiary dispute as it relates to the voluntary manslaughter. That is an intentional act. He's saying it wasn't his intention to shoot her, he just shot at her. So I'll give the reckless homicide, I will not give the voluntary manslaughter and, obviously, give the murder instruction, as well.

*Id*. at 54. The jury found Lee guilty of murder and that he used a firearm. The court found the aggravating circumstances included Lee's criminal record, his failed efforts at rehabilitation from 1996 to 2024, the impact on the victim's family, and that his child less than twelve years old was present. It found that Lee's remorse was a mitigating factor. It commented that Lee was "the worst of the worst." *Id*. at 113. The court sentenced Lee to sixty-five years and enhanced the sentence by twenty years for the firearm enhancement.

## Discussion

### I.

[6] Lee contends that the trial court abused its discretion in not instructing the jury on voluntary manslaughter. He argues that "only one shot was fired despite having a seventeen (17) round magazine," he called 911, and he stayed at the scene until officers and medics arrived. Appellant's Brief at 14. He argues that he removed the gun from the safe around 4:00 a.m., "the victim awoke around 6:30 or 7:00 a.m. and the two began to argue about the gun," and "there was no evidence contradicting his statement that he'd been in possession of the handgun hours before the shooting and, therefore, there was no cooling off period from the point of provocation to the point of the shooting." *Id*. at 15.

[7] A person commits murder when the person knowingly or intentionally kills another human being. Ind. Code § 35-42-1-1. A person commits voluntary manslaughter when the person knowingly or intentionally kills another human being "while acting under sudden heat." Ind. Code § 35-42-1-3(a). Sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter. Ind. Code § 35-42-1-3(b).

[8] "Sudden heat occurs when a defendant is provoked by anger, rage, resentment, or terror, to a degree sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection." *Conner v. State*, 829 N.E.2d 21, 24 (Ind. 2005). Sudden heat can be negated by a showing that a sufficient "cooling off period" elapsed

between the provocation and the homicide. *Morrison v. State*, 588 N.E.2d 527, 531-532 (Ind. Ct. App. 1992). Anger alone is not sufficient to support an instruction on sudden heat. *Suprenant v. State*, 925 N.E.2d 1280, 1282 (Ind. Ct. App. 2010), *trans. denied*. Nor will words alone constitute sufficient provocation to warrant a jury instruction on voluntary manslaughter. *Id.* "In addition to the requirement of something more than 'mere words,' the provocation must be 'sufficient to obscure the reason of an ordinary man,' an objective as opposed to subjective standard." *Id.* at 1282-1283 (citing *Stevens v. State*, 691 N.E.2d 412, 426 (Ind. 1997), *cert. denied*, 525 U.S. 1021 (1998)). Voluntary manslaughter involves an "impetus to kill" which arises "suddenly." *Id.* at 1283.

[9] An instruction on voluntary manslaughter as a lesser included offense to a murder charge is warranted only if the evidence reflects a serious evidentiary dispute regarding the presence of sudden heat. *Isom v. State*, 31 N.E.3d 469, 486 (Ind. 2015), *cert. denied*, 577 U.S. 1137 (2016). We review a trial court's finding that a serious evidentiary dispute does not exist for an abuse of discretion. *Brown v. State*, 703 N.E.2d 1010, 1019 (Ind. 1998).

[10] The record reveals that Lee and True argued for over an hour on the morning of September 19, 2023. Lee testified that he was angry. However, anger alone is not sufficient to support an instruction on sudden heat. *See Suprenant*, 925 N.E.2d at 1282. True walked away from Lee more than once, and she was walking away from him when he shot her in the back. The length of the extended argument before the shooting, the fact that True walked away more than once, and Lee's testimony that he waited for her to walk past the bed

before shooting so that he would not shoot her, do not support a claim of sudden heat. The evidence does not indicate that Lee was provoked to a degree sufficient to prevent deliberation and premeditation or render him incapable of cool reflection. We cannot say the trial court abused its discretion in declining to instruct the jury on the offense of voluntary manslaughter.

II.

Lee asserts that his "sentence is inappropriate due to the misapplication of aggravating and mitigating factors." Appellant's Brief at 16. He argues that he "should be given consideration for his acceptance of responsibility." *Id*. at 17. He points to his statement at trial that he regrets firing the gun and his statement at sentencing of "I hate me, too." *Id*. at 18 (citing Transcript Volume III at 111). He argues "[t]hese statements signify substantial remorse and acceptance of responsibility which was not considered by the trial court before sentencing [him] to the maximum sentence allowed by law." *Id*.

A trial court abuses its discretion if it fails to enter a sentencing statement, enters a sentencing statement that explains reasons for imposing a sentence but the record does not support the reasons, enters a sentencing statement that omits reasons that are clearly supported by the record and advanced for consideration, or considers reasons that are improper as a matter of law. *Anglemyer v. State*, 868 N.E.2d 482, 490-491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of

discretion. *Id.* at 491. The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does the defendant. *Rogers v. State*, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), *trans. denied.* An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493.

[13] The trial court found that Lee's remorse was a mitigating factor. The relative weight of the factor is not subject to review for abuse of discretion. *See Anglemyer*, 868 N.E.2d at 491. At sentencing, Lee did not argue that he accepted responsibility for his offense or that his acceptance of responsibility constituted a mitigating factor. We cannot conclude that Lee's acceptance of responsibility was clearly supported by the record and advanced for consideration. Further, Lee does not challenge the aggravating circumstances found by the court. We cannot say the trial court abused its discretion in rendering its sentence.

[14] Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether a sentence is inappropriate "turns on our sense of the

culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The Indiana Supreme Court has noted that "the maximum possible sentences are generally most appropriate for the worst offenders." *Buchanan v. State*, 767 N.E.2d 967, 973 (Ind. 2002).

[15] Lee does not present cogent argument that the nature of his offense or his character merits a revision of his sentence. Our review of the nature of the offense reveals that Lee and True had an extended argument, Lee held a loaded gun in his hand during the entire argument, and he ultimately shot True in the back, killing her. Three-year-old I.L. was in the residence and told an officer that "something was wrong with Mommy." Transcript Volume II at 179. Our review of the character of the offender reveals that Lee's criminal history includes prior felony convictions for burglary, attempted robbery, operating while intoxicated, and theft as well as misdemeanor convictions. The presentence investigation report ("PSI") indicates that Lee reported a history of substance abuse including the use of methamphetamine and fentanyl. The PSI states that Lee "has had his probation modified twice, his suspended sentence revoked once, and his probation revoked once." Appellant's Appendix Volume II at 85. The PSI also indicates that Lee's overall risk assessment score using the Indiana risk assessment tool places him in the very high risk to reoffend category. After due consideration, we conclude that Lee has not sustained

his burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.

[16] For the foregoing reasons, we affirm Lee's conviction and sentence for murder.

[17] Affirmed.

Mathias, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Jamie C. Egolf
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana