# FOR PUBLICATION



FILED
Sep 10 2013, 5:42 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT, PRO SE:

**JEROME BINKLEY**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEROME BINKLEY, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 84A05-1208-PC-441 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Christopher A. Newton, Judge
Cause No. 84D04-0011-CF-1672

**September 10, 2013**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

Jerome Binkley ("Binkley") appeals *pro se* from the post-conviction court's order denying his petition for post-conviction relief.

We reverse and remand.

## ISSUE

Whether the post-conviction court erred by summarily denying Binkley's petition for post-conviction relief.

## FACTS

The facts of Binkley's crimes were set forth in the opinion by our Supreme Court on direct appeal as follows: [1]

> The evidence at trial showed that in the early morning hours of August 31, 1991, Wayne Kemp was shot in the head while sitting in the front seat of his car. After completing an autopsy, the coroner could not determine what type of gun fired the fatal bullet. Furthermore, the police could not find the fatal bullet. They did discover, however, a spent shell casing on the floor of the car. Ballistics tests confirmed that the casing had housed a bullet fired from a Taurus nine-millimeter pistol found in a trash can behind the house of the appellant's friend, Dennis Owens.
>
> Linking the putative murder weapon to Binkley was an important element of the State's case. Though the pistol had been cleaned of fingerprints, Owens and another witness, Bill Loveland, testified that it had been in Binkley's possession the night of Kemp's murder. Police confirmed that the pistol was one of several firearms stolen a week before the murder from a Terre Haute sporting goods store. Binkley, Loveland, and Kemp were suspects in that robbery. Quite a number of the Terre Haute weapons were also recovered from Owens' trash can. According to Owens, Binkley had left a trash bag containing several guns, including the Taurus pistol, at his (Owens') house a few days before the murder. Owens took a fancy to the pistol, and at some point gave Binkley forty dollars toward its purchase.

---

[1] The Supreme Court set out the facts during their analysis of the sufficiency of the evidence argument.

The night before the murder, Owens and Binkley met with friends at various Terre Haute night spots. Owens had loaded the pistol before leaving home, and had it with him in his car. He still considered it to be Binkley's gun, and gave it to Binkley after he asked for it in the parking lot across the street from Nolan's Bar. At some point, Wayne Kemp's car pulled up to the group of revelers in the parking lot. Owens last saw appellant that night walking toward Wayne Kemp's car.

The next morning Binkley came to Owens' house and presented him with a cloth bundle containing the pistol, now covered with sand and dirt. Binkley left, but returned later in the day after being questioned by the police. He informed Owens that the police were looking for the guns stolen in Terre Haute in connection with Kemp's murder, and he said they needed to get rid of them. Owens, who had cleaned the Taurus pistol prior to Binkley's return, concealed it with the other weapons at the bottom of a trash can in the alley behind his house. A short while later Binkley was arrested at Owens' house for Kemp's murder. Owens subsequently led detectives to the stash of guns.

Loveland corroborated Owens' account in important ways. He testified he had been sleeping at Binkley's apartment on the night in question, and he was awakened at least twice before sunrise. On the first occasion, while Binkley was still out on the town, Wayne Kemp came by looking for him. Kemp left after smoking some cocaine, possibly heeding Loveland's suggestion to look for Binkley at Nolan's. (It was outside Nolan's where Owens observed appellant approach Kemp's car.)

Loveland was awakened again about 4 a.m. when Binkley returned to the apartment. The two took to the streets on Loveland's bicycle just as dawn was beginning to break. They first attempted to call on Owens. When no one responded to their knocking, Binkley produced a nine-millimeter pistol and hid it in the barbecue grill behind Owens' house (thus explaining the gritty coating Owens described). They next attempted to purchase cocaine at another location, without success, and finally proceeded at Binkley's direction to the alley where Kemp's car sat with his body inside.

At the car, Binkley retrieved the keys from inside and opened the trunk. Binkley told Loveland he had already taken five hundred dollars from Kemp and was searching for "the rest of the money."[2] The trunk search

---

[2] It seems that the day before his murder, Kemp had cashed his Indiana State University loan check. His widow testified that even after paying various debts and other expenses, he still had five or six one-hundred dollar bills on his person in the hours before his death. This cash was not recovered from the murder scene.

proved unsuccessful, and Loveland and Binkley departed for a nearby crack house. On each of two visits Binkley acquired a gram of cocaine. The cocaine had a street value of a hundred dollars per gram. When arrested several hours later, Binkley was carrying three one-hundred dollar bills and a one-dollar bill.

The testimony by Owens and Loveland strongly suggested Binkley's guilt, of course, but there was also physical evidence linking appellant to the murder. The clothes he was seen wearing the night of the murder turned up covered in blood in a dumpster. Tests of the blood on Binkley's sweatshirt and blue jeans indicated that the blood could have come from the decedent, but not from Binkley. There was also evidence that Binkley knew Kemp was about to receive his loan check. According to Loveland, Kemp had approached Binkley about purchasing some of cocaine once the loan check cleared. Binkley told Loveland he intended to "gank" (that is, rob) Kemp instead.

*Binkley v. State*, 654 N.E. 2d 736, 737-38 (Ind. 1995).

After two mistrials, Binkley was convicted of murder and found to be an habitual offender. Binkley was sentenced to sixty (60) years in prison for murder enhanced by thirty (30) years for being an habitual offender.

Thereafter, Binkley filed a direct appeal from his convictions, arguing that the evidence was insufficient to convict him of murder and that his ninety (90) year sentence was manifestly unreasonable. As part of his sufficiency argument, Binkley specifically challenged the credibility of Loveland's testimony. The Supreme Court addressed his sufficiency argument as follows:

Binkley's lawyer struggled mightily to undermine Loveland's testimony by introducing several sworn statements in which Loveland told different versions of the events on the night of Kemp's murder. His brief on appeal casts Loveland's testimony as "inherently unbelievable, and unreliable." Whatever incentives Loveland may have had to perjure himself, we think a jury could have reasonably concluded, based on the testimony of Loveland and Owens and the attendant physical evidence, that Binkley had indeed followed through with his stated intent to "gank" Kemp, with fatal consequences.

4

*Id.* at 738-39.  The Supreme Court affirmed both Binkley's conviction and sentence.  *Id.* at 740.

In 2000 and 2003, Binkley filed petitions for post-conviction relief ("PCR").  He eventually withdrew both petitions.  On July 20, 2012, Binkley filed a *pro se* petition for PCR, claiming that:

> trial counsel was ineffective for failure to adequately preserve that the knowing use of perjured testimony is fundamentally unfair; and a conviction obtained by the use of such testimony will not be upheld- which was stronger than the issue legally inapplicable for appellate review. This violated petitioner's Fifth, Sixth, and Fourteenth amendments to the United States Constitution, and state law.

(State's App. 2).  The State filed an answer to Binkley's petition on August 7, 2012.[3]  On August 13, 2012, the post-conviction court summarily denied Binkley's petition for PCR.  Binkley now appeals.

## DECISION

Binkley appeals from the post-conviction court's order denying post-conviction relief without conducting an evidentiary hearing.  Our standard of review in post-conviction proceedings is well settled.

> We observe that post-conviction proceedings do not grant a petitioner a "super-appeal" but are limited to those issues available under the Indiana Post-Conviction Rules.  Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence.  Ind. Post-Conviction Rule 1(5).  A petitioner who appeals the denial of PCR faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court.  The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous.  If a PCR

[3] Neither party included a copy of the State's answer in their appendices.

5

petitioner was denied relief, he or she must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court.

*Shepherd v. State*, 924 N.E.2d 1274, 1280 (Ind. Ct. App. 2010) (internal citations omitted), *trans. denied.*

The only issue on appeal is whether the post-conviction court erred by summarily denying Binkley's petition for PCR that raised a claim of ineffective assistance of counsel. The State argues that the post-conviction court did not err because the pleadings conclusively established that he was not entitled to relief. In addition, the State argues that Binkley's allegation of ineffective assistance of counsel was essentially the same issue addressed by our Supreme Court in his direct appeal. Binkley argues that his ineffective assistance of counsel claim is different because it involves a claim that his trial counsel did not adequately preserve the issue of whether the State's primary witness (Bill Loveland) committed perjury.

In addressing this issue, it is important to decide the appropriate standard of review. Post-Conviction Rule 1, section 4 outlines two different ways a post-conviction court may deny a petition without a hearing. A separate panel of this court has discussed the differences as follows:

> First, in subsection (f), the rule provides: "If the pleadings conclusively show that petitioner is entitled to no relief, the court may deny the petition without further proceedings." Second, in subsection (g), the rule provides:
>
>> The court may grant a motion by either party for summary disposition of the petition when it appears from the pleadings, depositions, answers to interrogatories, admissions, stipulations of fact, and any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

6

Disposal of a petition under each of these two subsections leads to a different standard of review on appeal.

When a court disposes of a petition under subsection (f), we essentially review the lower court's decision as we would a motion for judgment on the pleadings. The court errs in disposing of a petition in this manner unless 'the pleadings conclusively show that petitioner is entitled to no relief.' If the petition alleges only errors of law, then the court may determine without a hearing whether the petitioner is entitled to no relief on those questions. However, if the facts pled raise an issue of possible merit, then the petition should not be disposed of under section 4(f). 'This is true even though the petitioner has only a remote chance of establishing his claim.'

On the other hand, when a court disposes of a petition under subsection (g), we review the lower court's decision as we would a motion for summary judgment. We face the same issues that were before the post-conviction court and follow the same process. A grant of summary disposition is erroneous unless 'there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.' We must resolve all doubts about facts, and the inferences to be drawn from the facts, in the non-movant's favor. The appellant has the burden of persuading us that the post-conviction court erred.

\* \* \* \*

Under the plain language of subsection (g), a court may grant summary disposition after 'a motion by either party' and after considering the pleadings and other evidence submitted.' The language of subsection (f), on the other hand, permits a court to deny a petition based upon only the pleadings and apparently without a motion by either party. . . .

*Allen v. State*, 791 N.E.2d 748, 752-753 (Ind. Ct. App. 2003) (internal citations omitted),

*trans. denied*.

Concerning the issue of ineffective assistance of trial counsel, we have held this particular issue is fact sensitive. *Kelley v. State*, 952 N.E.2d 297, 300 (Ind. Ct. App. 2011). In fact, some factual determinations must be made. *Id*. "Consequently, when a

petitioner alleges ineffective assistance of counsel, and the facts pled raise an issue of *possible* merit, the petition should not be summarily denied. *Id*. at 300 (emphasis added).

In this case, it is clear from the record that the post-conviction court made its decision based solely on the pleadings under subsection (f). Neither party had submitted any affidavits, referred to other evidence, or filed a motion for summary disposition, which would have triggered subsection (g). As a result, we must determine whether the pleadings conclusively show that Binkley is not entitled to relief.

In his petition, Binkley inartfully argues that his trial counsel was ineffective for failing "to adequately preserve that the knowing use of [Loveland's] perjured testimony" was fundamentally unfair. (Binkley's App. 15). The State argues that the post-conviction court likely disregarded this argument because it was addressed by our Supreme Court on direct appeal. While our Supreme Court mentioned Loveland's perjured testimony, it did not address the testimony in terms of whether the manner in which Binkley's trial counsel sought to prevent or counteract the testimony amounted to ineffective assistance of counsel. In other words, whether the performance of Binkley's trial counsel (1) fell below an objective standard of reasonableness; and (2) but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ineffective assistance is a separate and distinct inquiry from whether there is sufficient evidence to support a conviction. This is partly why an ineffective assistance claim is available for post-conviction relief, even when the issue is available and not raised on direct appeal. *Landis v. State*, 749 N.E.2d 1130 (Ind. 2001).

Because Binkley has pled sufficient facts to raise an issue of possible merit, we find that the trial court erred in summarily denying Binkley's PCR petition. As a result, we remand for further proceedings on Binkley's ineffective assistance of counsel claim and direct the post-conviction court to issue findings of fact and conclusions of law consistent with Post-Conviction Rule 1(6).

Reversed and remanded.

KIRSCH, J., and VAIDIK, J., concur.