## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 11 2019, 11:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stephen T. Owens
Indianapolis, Indiana

C. Brent Martin
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela Sanchez
Assistant Section Chief, Criminal
Appeals
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Duriel Jareau Williams, | February 11, 2019 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 18A-PC-1522 |
| v. | Appeal from the Lake Superior Court |
| State of Indiana, | The Honorable Natalie Bokota, Magistrate Judge |
| *Appellee-Respondent.* | The Honorable Samuel L. Cappas, Judge |
| | Trial Court Cause No. 45G04-1706-PC-4 |

**Tavitas, Judge.**

## Case Summary

Duriel Williams appeals the post-conviction court's ("PC court") denial of his petition for post-conviction relief ("PCR") after Williams' conviction for murder. We affirm.

## Issues

Williams raises one issue for our review, which we restate as two issues:

I. Whether Williams' trial counsel rendered ineffective assistance by failing to object to the erroneous jury instruction regarding voluntary manslaughter.

II. Whether Williams' appellate counsel rendered ineffective assistance by failing to raise the issue of the erroneous jury instruction regarding voluntary manslaughter on appeal.

## Facts

The underlying facts of this cause were set out in Williams' direct appeal in *Williams v. State,* No. 45A03-1507-CR-927 (Ind. Ct. App. Mar. 9, 2016):

> On January 28, 2013, Erich Beard was shot and killed in Lake County, Indiana. Prior to the shooting, Brandi Phillips, who had previously dated Williams, had been traveling around in Gary in Beard's truck with Beard, Williams, and another woman. Phillips was present when Williams and Beard exited the truck and Williams pointed a gun at Beard and shot him three or four times. At some point after the shooting, Phillips was riding in a car with her aunt and saw Williams, who entered the car and told Phillips that she "better not have [sic] ran [her] mouth."

*Williams,* slip op. p. 1. Williams appealed, raising only the issue of whether the trial court abused its discretion in admitting certain testimony pursuant to Indiana Evidence Rule 804. *Id.* A panel of our court affirmed Williams' conviction.

[4] Williams then filed his petition for PCR, followed by an amended petition for PCR, arguing that his trial counsel rendered ineffective assistance by failing to object to final jury instruction four ("Instruction 4") and instruction eight ("Instruction 8"), regarding the lesser included offense of voluntary manslaughter. Williams also claimed that his appellate counsel similarly rendered ineffective assistance by failing to raise the same issue on appeal.

[5] Instruction 4 stated:

> Voluntary manslaughter is a lesser included offense to the crime of murder and is defined in pertinent part by statute as follows: A person who knowingly or intentionally kills another human being while acting under sudden heat by means of a deadly weapon commits voluntary manslaughter, a class A felony.
>
> To convict the Defendant, the State must have proved each of the following elements:
>
> 1. The Defendant,
>
> 2. knowingly or intentionally,
>
> 3. killed another human being, to wit Erich Christopher Beard,

> 4. by means of a deadly weapon, to wit: A firearm,
>
> 5. while acting under sudden heat,
>
> 6. on or about January 28, 2013.

Appellant's App. Vol. II pp. 204-05.

[6]     Instruction 8 stated:

> First consider whether the Defendant is guilty of murder. If you find that the Defendant is guilty of murder, your job is completed and you need not consider any other lesser included offenses. If the State fails to prove the Defendant committed murder, you may consider whether the Defendant committed voluntary manslaughter, a lesser included offense.

*Id.* at 205.

[7]     Subsequently, Williams filed a motion for summary disposition of the petition for PCR. The PC court denied Williams' motion for summary disposition and Williams' petition for PCR without a hearing. The PC court acknowledged that the instructions were incorrect because "[s]udden heat is not an element of the offense of voluntary manslaughter." *Id.* Still, the PC court concluded that, because "the facts and evidence at trial did not support the existence of sudden heat[,]" the error was harmless. *Id.* at 207. As a result, the PC court found that neither Williams' trial counsel nor appellate counsel rendered ineffective assistance. Williams now appeals.

## Analysis

[8]    Williams appeals the denial of his petition for PCR on summary disposition. Post Conviction Rule 1, Section 4(g) states:

> The court may grant a motion by either party for summary disposition of the petition when it appears from the pleadings, depositions, answers to interrogatories, admissions, stipulations of fact, and any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The court may ask for oral argument on the legal issue raised. If an issue of material fact is raised, then the court shall hold an evidentiary hearing as soon as reasonably possible.

*See Binkley v. State,* 993 N.E.2d 645, 650 (Ind. Ct. App. 2013) (stating "'under the plain language of subsection (g) [of Post-Conviction Rule 1, Section 4], a court may grant summary disposition after a motion by either party and after considering the pleadings and other evidence submitted'") (quoting *Allen v. State,* 791 N.E.2d 748, 752-53 (Ind. Ct. App. 2003) (internal citations omitted), *trans. denied).* On review,

> An appellate court reviews the grant of a motion for summary disposition in post-conviction proceedings on appeal in the same way as a motion for summary judgment. Thus summary disposition, like summary judgment, is a matter for appellate de novo determination when the determinative issue is a matter of law, not fact.

*McClure v. State,* 71 N.E.3d 845, 847 (Ind. Ct. App. 2017) (quoting *Norris v. State,* 896 N.E.2d 1149, 1151 (Ind. 2008)), *trans. denied.*

We note that Williams' brief focuses on the issue of "[w]hether it was harmless error to give fundamentally erroneous instructions on the lesser included offense of voluntary manslaughter." Appellant's Br. p. 4. In *Bailey v. State,* our supreme court addressed such free standing claims and held:

> Any issue set forth in a post-conviction petition must be raised within the purview of the post-conviction rules, e.g., deprivation of the Sixth Amendment right to effective assistance of counsel, or be an issue demonstrably unavailable to the petitioner at the time of his trial and direct appeal. Therefore, in a post-conviction petition an allegation of the denial of the petitioner's due process rights may not be raised in the "free-standing" form of an allegation of fundamental error.

472 N.E.2d 1260, 1263 (Ind. 1985). While we do address Williams' argument, we do it in the course of determining whether Williams' trial counsel and appellate counsel rendered ineffective assistance. We decline to address this issue independently as it is a free standing claim and not one of the issues we will consider in a petition for PCR. *See Lindsey v. State,* 888 N.E.2d 319, 325 (Ind. Ct. App. 2008), *trans. denied.*

### A. Trial Counsel

Williams argues his trial counsel rendered ineffective assistance for failing to object to the erroneous jury instructions. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that: (1) his or her counsel's performance was deficient, and (2) the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064

(1984)), *reh'g denied*, *cert. denied*, 534 U.S. 830, 122 S. Ct. 73 (2001). The failure to satisfy either prong will cause the claim to fail. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006). Ineffective assistance of counsel claims, thus, can be resolved by a prejudice analysis alone. *Id.*

[11] An attorney's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Woodson v. State*, 961 N.E.2d 1035, 1041 (Ind. Ct. App. 2012), *trans. denied*. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *McCullough v. State*, 973 N.E.2d 62, 74 (Ind. Ct. App. 2012), *trans. denied*. "[A] defendant must offer strong and convincing evidence to overcome this presumption." *Id.* Isolated poor strategy, inexperience, or bad tactics does not necessarily constitute ineffective assistance of counsel. *Id.*

[12] In order to demonstrate prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Weisheit v. State,* 109 N.E.3d 978, 983 (Ind. 2018) (quoting *Strickland,* 466 U.S. at 694, 104 S. Ct. 2052).

[13] In deciding whether counsel rendered ineffective assistance, we will begin by looking at the alleged error. Williams argues that his counsel's performance was deficient by failing to object to the erroneous final jury instructions, and

accordingly, that Williams was prejudiced.  "The trial court has broad discretion as to how to instruct the jury, and we generally review that discretion only for abuse."  *Kane v. State,* 976 N.E.2d 1228, 1231 (Ind. 2012) (citing *Mayes v. State,* 744 N.E.2d 390, 394 (Ind. 2001)).  "Where, however . . . the appellant's challenge to the instruction is based on the first of our three considerations—an argument that the instruction was an incorrect statement of the law—we review the trial court's interpretation of that law de novo."  *Kane,* 976 N.E.2d at 1231 (citing *LaPorte Cmty. Sch. Corp. v. Rosales,* 963 N.E.2d 520, 523 (Ind. 2012)).

[14]  The PC court agreed that Instruction 4 was erroneous, as did the State.  *See* Appellee's Br. p. 13 (stating that "the State agreed only that Final Instruction 4 was erroneous . . .").  We agree that Instruction 4 incorrectly stated the law. The trial court was incorrect to instruct the jury that sudden heat is an element of voluntary manslaughter.  *See Watts v. State,* 885 N.E.2d 1228, 1232 (Ind. 2008) (holding that, with voluntary manslaughter, "sudden heat is a mitigating factor, not an element, that the State must prove *in addition* to the elements of murder.  Though counterintuitive, it is logical: if a mitigating factor is present, the offense is certainly lesser than, if not included in, the greater offense") (emphasis supplied).  Indeed, the voluntary manslaughter statute itself identifies sudden heat as a mitigating factor.  Indiana Code Section 35-42-1-3 states:

>  (a) A person who knowingly or intentionally:

>>    (1) kills another human being; or

> (2) except as provided in section 6.5 of this chapter, kills a
> fetus in any stage of development;
>
> while acting under sudden heat commits voluntary
> manslaughter, a Level 2 felony.
>
> (b) The existence of sudden heat is a mitigating factor that
> reduces what otherwise would be murder under section 1(1)
> of this chapter to voluntary manslaughter.

[15]  Similarly, with Instruction 8, it was incorrect to instruct the jury that if it found that the State did not prove Williams committed murder, it could then consider whether Williams committed voluntary manslaughter. *See McDowell v. State,* 102 N.E.3d 924, 935-36 (Ind. Ct. App. 2018) (summarizing our supreme court's conclusion in *Watts,* that "[w]ith voluntary manslaughter, the failure to prove one of the essential elements of the greater offense of murder is also the failure to prove one of the essential elements of the lesser offense of voluntary manslaughter"), *trans. denied.* In other words, the jury could have considered both murder and voluntary manslaughter simultaneously if there was evidence of sudden heat.

[16]  Despite the erroneous jury instructions, and trial counsel's failure to object, the PC court found that Williams was not prejudiced by his trial counsel's performance. Consequently, we will consider whether there is a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different. *See Johnson v. State,* 901 N.E.2d 1168, 1174 (Ind. Ct. App. 2009) (finding that, because the violation at issue was harmless error, the result

of the trial would not have been different, and therefore, the defendant could not demonstrate prejudice).

[17]     Determining whether Williams was prejudiced necessarily requires us to consider whether there was evidence of sudden heat. Because Williams was convicted of murder, and not the lesser included offense of voluntary manslaughter, we must determine whether there was evidence of sudden heat to justify the instruction for voluntary manslaughter. If there was no evidence of sudden heat, the instruction on voluntary manslaughter was harmless, because a conviction on the same could not have been sustained. *See Wilkins v. State,* 716 N.E.2d 955, 957 (Ind. 1999) (finding that a voluntary manslaughter instruction in the absence of sudden heat was harmless because the "instruction merely presented the jury with another lesser option that it rejected"). Evidence of sudden heat is a key consideration when determining whether an instruction on voluntary manslaughter should be given because,

> [a]lthough [v]oluntary [m]anslaughter is a lesser-included offense of [m]urder, it is an atypical example of a lesser-included offense. In the case of [v]oluntary [m]anslaughter, sudden heat is a mitigating factor that the State must prove in addition to the elements of murder. Sudden heat must be separately proved and, therefore, if there is no serious evidentiary dispute over sudden heat, it is error for a trial court to instruct a jury on voluntary manslaughter in addition to murder.

*Suprenant v. State,* 925 N.E.2d 1280, 1282 (Ind. Ct. App. 2010), *trans. denied.*

[18] Sudden heat "exists when a defendant is 'provoked by anger, rage, resentment, or terror, to a degree sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection.'" *Brantley v. State,* 91 N.E.3d 566, 572 (Ind. 2018) (quoting *Isom v. State,* 31 N.E.3d 469, 486 (Ind. 2015), *cert. denied*, 136 S. Ct. 1161 (2016)).

[19] In reviewing the jury trial transcript, the evidence of conflict between Williams and Beard includes the following:

1. Brian Ragulen, a witness, told Officer Nielsen that just before the shooting, he overheard an individual shout "B****, why won't you let me see her." Tr. Vol. I p. 156. At the trial, Ragulen also denied telling Officer Nielsen about this argument.

2. Brandi Phillips, Williams' girlfriend, stated that on January 28, after Williams and Beard came to pick her up, they argued several times. Phillips could not testify as to the specifics regarding the argument because she "really wasn't paying attention to it like that." Tr. Vol. II p. 104. However, Phillips did state that the group "ran down 5th, and something was said[,]" and specifically that "[Williams] and [Beard] was [sic] arguing." *Id.* Phillips stated the men "had words[,]" but she did not recall what those words were. *Id.* at 112.

3. At some point during their drive, Williams went to his mother's house. Williams became angry because "[s]omebody had busted out his mama [sic] window, and he was going crazy. His mama was trying to calm him down." *Id.* at 105. At this point, Williams got a gun from inside his mother's house.

4. After leaving Williams' mother's house, the argument between Beard and Williams continued. The argument, according to Phillips, centered around Williams' perception that Beard was "reaching for something." *Id.* at 112. According to Phillips, Beard wanted Williams to take the two women in the vehicle home that evening, but Williams declined.

5. Phillips testified that Williams "pulled a gun" on Beard stating: "They had some words. [Williams] was driving, stopped, put it in drive [sic], got out the truck, pulled the gun on [Beard]." *Id.* at 116. Williams then told Beard that he "loved him." *Id.* at 117. During this time, Phillips testified that Beard had his hand on "[a] Seagram's bottle." *Id.* at 154. Williams was also quoted as saying to Beard "You don't think I won't" around this same time. *Id.* Williams then got back in the car and the group went to a "crackhead['s]" house on Taft street. *Id.* at 118.

6. Once at the house, Williams and Beard continued arguing. According to Phillips, "[Williams] told [Beard] if he do [sic] something, that he was going to get him. [Beard] walked back to his truck, got in a – [Williams] pull[ed] the gun out and [said], 'If you pull out, I'm going to fan this up.'" *Id.* at 124.

7. Then, "[Beard] . . .walked up to [Williams], [Williams] shot him." *Id.* Phillips said that Beard just walked up to Williams "like a normal person." *Id.* at 129. Phillips seemed to believe that Williams may have thought Beard was going to "do something" to Williams because "Anybody would think that." *Id.* Beard walked up to Williams very close— approximately three inches away from Williams' face.

8. When asked if Williams said anything during the exchange, Phillips testified "[Williams] told him he love[d] him, 'Don't do it. Don't do it.' I mean, I don't remember all of it." *Id.* at 130. Beard's hands were down at his side when he approached Williams.

9. Finally, there was also testimony from Ernest Eskridge, who testified that earlier in the evening, approximately forty-five minutes before the shooting, he and Williams got into a "verbal argument." Tr. Vol I p. 96.

[20]   We agree with the PC court that, while there was evidence of ongoing conflict between Williams and Beard, and that Williams was angry the evening of the shooting, this does not amount to a finding of sudden heat. We believe an example from our supreme court is illustrative. In *Brantley,* our supreme court found evidence of sudden heat, "although scant[,]" when:

> Brantley consistently testified that the situation in his home on July 14, 2014, was chaotic. Central to this chaos was Bruce, whose temper raged and anger oscillated between Martha and Brantley. But this situation was not a one-off occurrence, and it would be misguided to think of it in a vacuum. Brantley's relationship with Bruce was strained. Bruce saw Brantley as a financial burden on him and Martha. Brantley had witnessed Bruce's domestic violence against his sister and nephew. Brantley also knew that Bruce had a history of mental illness. And crucially, Brantley knew that Bruce kept sharp objects in his chair. So, when Bruce angrily rose from his chair, after telling Brantley he was "getting ready to get rid of all his problems *right now*" and Brantley's eye caught something shiny in Bruce's hand, it was well within the jury's province to consider whether Brantley experienced terror and had the sudden impetus to kill.

*Brantley,* 91 N.E.3d at 572.

[21] In Williams' case, the evidence was simply that Williams and Beard argued the evening Williams shot Beard. There was no evidence of the actual substance of the argument between Williams and Beard. There was no evidence that their relationship, generally, was strained. In fact, Williams told Beard he loved him earlier in the night. Every argument or disagreement between parties does not amount to sudden heat. *See Suprenant,* 925 N.E.2d at 1282 (concluding "[a]nger alone is not sufficient to support an instruction on sudden heat. . . . Nor will words alone 'constitute sufficient provocation to warrant a jury instruction on voluntary manslaughter,' and this is 'especially true' when the words at issue are not intentionally designed to provoke the defendant, such as fighting words.") (*quoting Allen v. State,* 716 N.E.2d 449, 452 (Ind. 1999))*.*

[22] Because the evidence did not support the existence of sudden heat, there is no reasonable probability that the outcome of the jury trial would have been different. Accordingly, Williams was not prejudiced by trial counsel's failure to object to the erroneous instructions. The PC court properly denied Williams' claim of ineffective assistance of trial counsel.

### *B. Appellate Counsel*

[23] Williams also argues that his appellate counsel rendered ineffective assistance because "Williams was entitled to the instructions on voluntary manslaughter[, therefore,] appellate counsel was ineffective for not raising the issue on direct appeal." Appellant's Br. p. 18. Had he done so, according to Williams, "the

result of the appeal would have been different as the erroneous instructions given by the lower court would have been found to constitute fundamental error." *Id.*

[24] "Our standard of review for claims of ineffective assistance of appellate counsel is the same as for trial counsel's ineffective assistance." *Jervis v. State,* 28 N.E.3d 361, 369 (Ind. Ct. App. 2015) (citing *Fisher v. State,* 810 N.E.2d 674, 676 (Ind. 2004)), *trans. denied*. There are three categories of alleged appellate counsel ineffectiveness. *See Bieghler v. State,* 690 N.E.2d 188, 193 (Ind. 1997), *cert. denied*, 525 U.S. 1021, 119 S. Ct. 550 (1998). The three categories are: (1) denying access to appeal; (2) waiver of issues; (3) failure to present issues well. *See id.* Williams' claim falls in the second category, because he argues that appellate counsel did not raise a particular issue. "When assessing claims under the second category, reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable." *Daugherty v. State,* 52 N.E.3d 885, 890 (Ind. Ct. App. 2016), *trans. denied*.

[25] Because we find that trial counsel did not render ineffective assistance by failing to challenge the erroneous jury instructions, we find that appellate counsel was similarly not ineffective. Even if appellate counsel had raised the issue on direct appeal, this court would have reached the same conclusion that we have here. Accordingly, Williams has not met his burden in proving that he was prejudiced by appellate counsel's performance. The PC court properly denied Williams' claim of ineffective assistance of appellate counsel.

## Conclusion

[26] Williams' trial counsel and appellate counsel did not render ineffective assistance. Accordingly, the PC court did not err in denying Williams' petition for PCR. We affirm.

[27] Affirmed.

Brown, J., and Altice, J., concur.